# Richmond

## Clarence B. Isbell, Administrator, et als. v. Norman L. Flippen, Executor of the Estate of John B. Wood, Deceased.

January 13, 1947.

Record No. 3139.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*M. J. Fulton* and *McC. G. Finnigan*, for the appellants.

*May, Simpkins, Young & Rudd*, for the appellee.

EGGLESTON, J., delivered the opinion of the court.

On June 18, 1929, Ben Wood executed and delivered to his brother, John B. Wood, a promissory note in the principal sum of $18,000, payable to bearer five years after date, and bearing interest at the rate of six per cent per annum. This principal note and a series of notes representing the interest obligation were secured by a deed of trust, of even date, from the debtor to Norman L. Flippen, trustee, covering certain real estate in the city of Richmond. As further security for the payment of the debt, Ben Wood executed, on the same day, an assignment to his brother of the rents from certain of the properties.

On November 29, 1933, Ben Wood executed and delivered to his brother another note in the principal sum of $3,000, with interest thereon at the rate of six per cent per annum, payable to bearer on June 18, 1934. At the same time the debtor executed another deed of trust to Norman L. Flippen, trustee, to secure the $3,000 note and the note of $18,000 which he had previously executed. This deed of trust covered some of the property which had been in-

cluded in the former deed of trust, and other property as well.

On September 1, 1935, John B. Wood, the holder of these notes, died leaving a will in which he named the Richmond Trust Company and Norman L. Flippen as executors. The Trust Company having declined to act, Flippen qualified as the sole executor.

In July, 1938, Norman L. Flippen, as executor of the estate of John B. Wood, deceased, filed a bill in the court below, setting out the above facts and alleging that default had been made in the payment of both debts secured. Inasmuch as he (the complainant) was both the holder of the notes and the trustee in the two deeds of trust, he prayed the aid of a court of equity in foreclosing the obligations.

Ben Wood filed a joint demurrer and answer. The demurrer was in general language and alleged merely that the bill failed to state a cause of action.

While the answer admitted the execution of the notes and deeds of trust, it denied that the defendant had received full consideration therefor. It alleged that these supposed obligations had been executed for the purpose of protecting the defendant "against his creditors," and to prevent their instituting foreclosure proceedings against his properties. Moreover, the defendant alleged that John B. Wood had "never intended" that whatever amounts he (John) might have expended for his (Ben's) benefit, "should ever be returned or repaid to him, or to any one else for him;" that repeatedly during his lifetime John B. Wood had told the defendant of his intent to renounce these claims, and that such renunciation had been repeated in his (John's) will.

Depositions on behalf of the complainant were taken in the fall of 1939. Those on behalf of the defendant were taken in February and March, 1945. In the meantime Ben Wood had died, without having testified, and the suit against him was revived in the name of Clarence B. Isbell, his administrator.*

*Certain other members of the Wood family were made parties defendant to the proceeding, but the record does not disclose why or how this was accomplished.

After a consideration of the depositions, the lower court entered a decree establishing both notes as "valid and subsisting obligations against the estate of Ben Wood and in favor of the estate of John B. Wood," fixing the amount due, and entering judgment thereon. From this decree Isbell, administrator of the estate of Ben Wood, and others, have appealed.

The first claim of the appellants is that the lower court erred in overruling the demurrer. Here the argument, if we comprehend it, is that since the will of John B. Wood did not specifically authorize him to do so, the executor had no right to institute the present suit.

This contention is so lacking in merit that it hardly needs discussion. Code, section 5377, provides that, "It shall be the duty of every personal representative to administer, well and truly, the whole personal estate of his decedent."

One of the primary obligations of the personal representative is to collect the assets of the estate, which, of course, includes the duty to reduce choses in action to judgment. Harrison on Wills and Administration, sections 160, 372; 3 Minor's Institutes, 2d Ed. Rev., p. 580; 21 Am. Jur., Executors and Administrators, sections 221, 222, p. 495.

Indeed, failure to proceed promptly with the collection of assets due the decedent's estate is negligence, for which the personal representative may be liable under Code, section 5406. See *Virginia Surety Co. v. Hilton*, 181 Va. 952, 27 S. E. (2d) 62.

The principal contention of Ben Wood's administrator is that John B. Wood made to his brother, Ben, a gift of such funds as were necessary to take up the claims of Ben's pressing creditors; that John never intended to exact a repayment of these advances; and that the notes, deeds of trust and assignment of rents were taken merely to protect Ben from his own improvidence.

Mr. Flippen, the executor of John B. Wood's estate, a member of the Richmond Bar, testified that he represented both brothers in settling Ben's obligations with funds advanced for the purpose by John; that he (Flippen) received

the funds from John and disbursed them in taking up Ben's pressing obligations. Mr. Flippen said that he prepared a detailed statement of these advances which Ben acknowledged in writing to be correct. A copy of this statement and acknowledgment is in the printed record.

According to his further testimony, Mr. Flippen prepared the notes, deed of trust and assignment of rents executed by Ben Wood in June, 1929, evidencing and securing these advances which amounted to a little over $18,000. In all of these transactions, Mr. Flippen testified, neither John nor Ben said or did anything to indicate that the documents signed by Ben were to be regarded otherwise than as valid and legal obligations binding on Ben to repay the advances which his brother, John, had made for him.

Moreover, Mr. Flippen said, he continued to act as John B. Wood's legal adviser until the latter's death in 1935. He drew John B. Wood's will in 1931, and was named therein as one of the executors. Throughout this entire period John B. Wood said nothing to his counsel to indicate that his advances to Ben were gifts, or that he (John) regarded Ben's obligations to him otherwise than what they purported to be.

Under the assignment of rents executed by Ben Wood in June, 1929, the income from the specified properties was regularly paid to John B. Wood and applied by him to the interest on the $18,000 note until John's death on September 1, 1935. After John's death these payments under this assignment were made to Mr. Flippen, as John's personal representative, until Ben Wood ordered the rental agents to discontinue them, on or about January 1, 1938.

Mr. Flippen's testimony further discloses that after the receipt of Ben Wood's $18,000 note, in June, 1929, John B. Wood continued to make advances for his brother. In November, 1933, at John B. Wood's urgent and repeated insistence, Ben Wood secured these further advances by the execution of the $3,000 note, secured by the second deed of trust to which we have referred. This second deed of trust secured both the new note of $3,000, evidencing

the recent advances, and also the former note of $18,000 dated June 18, 1929. It was executed by Ben only after his brother had threatened to foreclose the first deed of trust.

Ben Wood's administrator undertook to overcome the force of this evidence by the introduction of the testimony of four witnesses, all intimate friends of Ben Wood. Over the objection of John B. Wood's executor, these witnesses testified, in substance, that at various times they had heard John B. Wood say that he had made a gift to his brother, Ben, of the funds which he (John) had advanced for Ben's benefit, and that he (John) did not intend to require Ben to repay these advances.

It is not necessary to stop to inquire whether such testimony, given under these circumstances, is sufficient to overcome the presumed validity of Ben Wood's written promises to pay his indebtedness to his brother, as fortified by the testimony of Mr. Flippen. For a more substantial reason it is effective to accomplish that purpose.

The purpose and effect of this parol evidence, if believed, is to establish a renunciation by John B. Wood of these claims against his brother which are evidenced, as the record shows, by negotiable notes. This is in direct contravention of the provision in the Uniform Negotiable Instruments Act, carried into Code, sec. 5684, that "A renunciation must be in writing unless the instrument is delivered up to the person primarily liable thereon."

In the case before us there is no evidence that the notes were ever delivered to Ben Wood, the primary obligor, and hence their discharge cannot be established by evidence of an oral release or renunciation. See 8 Am. Jur., Bills and Notes, sec. 782, p. 437; 10 C. J. S., Bills and Notes, sec. 474, p. 1027.

The appellants seek to supply the written evidence of renunciation required by this statute by arguing that the will of John B. Wood, by necessary implication, indicates the intent of the testator to renounce the claims.

The will contains this provision: "FIFTH: At the present time, some of my relatives to whom I have bequeathed a

portion of my estate are indebted to me, and I will hereafter prepare and attach hereto a schedule setting forth the amount of that indebtedness, and I direct that my executors shall charge against the interest of any legatee or devisee, other than my wife, the amount of the indebtedness due by such legatee or devisee to me before paying to such legatee or devisee any portion of my bequest made herein; * * * ."

Attached to the will is a codicil of even date therewith in which the testator says that he is "setting forth a memorandum of the indebtedness of some of my relatives to me as of this date, which memorandum in the form of this codicil is attached to and made a part of my will, as set forth in the 'Fifth' clause * * * ."

This codicil contains the names of a dozen relatives and the respective amounts which the testator had advanced to each. . The argument is that since Ben Wood is left a bequest of $100 in the main body of the will, the failure of the testator to include Ben's name in the codicil as one to whom an advance has been made and against whom a charge should be offset, shows a plain intent on the part of the testator to forgive or renounce his claim for these advances to Ben.

Just why Ben's name is not listed among those whom the testator had benefited is, of course, pure speculation. It may have been that the testator thought it useless to tell his executors to offset Ben's debt, which then amounted to at least $18,000, against a gift of $100. It may have been because the testator regarded the security for the debt as ample.

A more plausible reason for the omission may be that the list was not intended to be complete or to include all of the testator's relatives who were indebted to him. He characterized the codicil as being a "memorandum of the indebtedness of *some of* my relatives to me".

Moreover, had the testator intended to renounce his substantial claim against Ben, he could easily have done so in specific language. The fact that he left this brother only $100 negatives any intent of generosity towards him. It

clearly corroborates the testimony of Mr. Flippen that at the time of the execution of the will John B. Wood was provoked at Ben's conduct, and stated that for that reason he (John) was making no substantial provision for Ben in the will.

But aside from this, we think the matter is put at rest by the conduct of the testator subsequent to his execution of the will. The will was executed in April, 1931. And yet in November, 1933, we find the testator demanding of and obtaining from his brother, under the threat of a foreclosure of a former deed of trust, a second deed of trust which secured not only recent advances of $3,000, but the very $18,000 debt which it is claimed he (the testator) had renounced. Clearly, this disproves any implied intent to release or renounce the claim.

The final assignment of error is that the lower court fixed the amount due to John B. Wood's estate by Ben Wood's estate, and entered judgment therefor, without requiring an accounting of the rents received under the assignment by John during his life, and by the latter's executor since his death.

This contention is entirely without merit. The decree appealed from fixes the amount of the indebtedness "as shown by (the) deposition of complainant's witness, G. Cabell Lawton." This witness, an accountant, testified that he had arrived at the correct amount due after having given Ben Wood's estate credit for these rents, as shown by a statement furnished by the rental agent. Although this statement was offered in evidence, it was not brought up as a part of the record. Without it we, of course, cannot say whether it substantiates the testimony of the witness. But it is significant that the statement was offered in evidence without objection from Ben Wood's administrator. Indeed, the rental agent was not cross-examined as to the correctness of the statement of the rents, nor was Lawton, the accountant, questioned as to his accuracy in ascertaining the correct amount due on the notes.

The decree appealed from is

*Affirmed.*